HOOD, Judge.
This is a workmen’s compensation suit instituted by Kenneth F. Hall against Travelers Insurance Company, the latter being the insurer of plaintiff’s employer, Gulf Machine Shop. Judgment was rendered by the trial court in favor of plaintiff, awarding him compensation benefits based on total and permanent disability. Defendant has appealed.
The issues to be determined are whether plaintiff is totally and permanently disabled, and whether the sum awarded to him for medical expenses is excessive.
Hall sustained injuries to his neck and back on August 14, 1967, during the course of his employment as a welder by Gulf Machine Shop, in Lake Charles. He was operating a crane moving a 2S0 pound steel plate at the time the accident occurred. A clamp on the crane accidentally released the plate, causing it to fall and to strike plaintiff on the back of his head and shoulders, knocking him to the ground.
Compensation benefits were paid to plaintiff by defendant for a total of 45 weeks, from September 1 to September 5, 1967, and from October 25, 1967 until September 3, 1968. The payment of these benefits was discontinued on the last mentioned date because the medical reports submitted to defendant indicated that plaintiff was able to return to work by that time.
Plaintiff resumed the performance of the duties of his employment within a few minutes after the accident occurred, and he continued to work regularly for the defendant’s insured, Gulf Machine Shop, from the date of the accident until October 25, 1967, at which time he voluntarily terminated his employment because of a wage dispute — not because of disability or inability to do the work. He instituted this suit oil December 6, 1967.
Hall was 59 years of age when the accident occurred. He testified that about one week after the accident he began to suffer severe headaches, neck pain and stiffness in his back and shoulders, but that he nevertheless continued to perform all of his duties as a welder for Gulf Machine Shop during the remainder of the day of the accident and for more than two months after that date. After he quit working for Gulf Machine Shop on October 25, 1967, he obtained other jobs and he kept on working regularly for more than two years, until December 23, 1969. He stated that he has not returned to work as a welder since the last mentioned date because of “severe headaches and hurting and stiffness in my shoulders,” and that “I tired a whole lot easier and it was harder for me to get around to do a day’s work.” He, of course, was at least 61 years of age when he felt that these symptoms were severe enough to prevent him from continuing to work as a welder.
Stacey W. Smith, president and general manager of Gulf Machine Shop, testified that after the date of the accident, and up to the time plaintiff quit his job, Hall “worked when he felt like it,” but that he never complained about an injury and that he never indicated that he was disabled from performing the work of a welder. Smith also stated that during the three month period immediately prior to the accident, Hall was absent from work occasionally for as long as a week at a time because of illness in his family. And, he testified that Hall was absent on other occasions before the accident, giving as his reasons for being absent that “he had a headache or his neck hurt or his shoulder hurt,” that “he had arthritis,” and that “it was his arthritic condition that was causing this discomfort.” According to Smith's testimony, therefore, plaintiff had the same symptoms before the accident as he has now.
The record contains the testimony or reports of five medical experts, four of whom treated plaintiff. Dr. Gerald N. *122 Weiss, a surgeon, examined him on August 28, 1967, and concluded that plaintiff had sustained contusions of the right leg, right forearm and right shoulder as a result of the accident. He treated plaintiff from that date until September 20, 1967, a period of a little more than three weeks, and discharged him on the last mentioned date as being fully recovered and as being able to return to his regular work on September 25, 1967.
Dr. Jerome W. Ambrister, an orthopaedic surgeon, saw and treated plaintiff five times from October 23, 1967, until February 5, 1968. He discharged plaintiff on the last mentioned date as being able to return to work. After discharging him, Dr. Ambrister, examined Hall again on August 14, 1968, and on June 24, 1970. All of his clinical and x-ray examinations were negative for injury or disability, except that he found “arthritic changes of the cervical and dorsal regions of the vertebral column, which were of long standing.” He testified, however, that the arthritic changes were “minimal,” that they “pre-existed the injury,” and that they were not disabling. He concluded that as a result of the accident of August 14, 1967, Hall had sustained a “straining type of injury to the cervical and upper dorsal region of the vertebral column,” but that he had recovered from that injury, that he was not disabled and that he could return to work as a welder as of February 5, 1968.
Dr. Heinz K. Faludi, a neurosurgeon, examined and treated plaintiff on December 12, 1967, and on February 21 and May 22, 1968. His examinations were negative as to injury or disability. Based on history and complaints, however, Dr. Faludi concluded that Hall had sustained an injury on August 14, 1967, but that he had recovered from all of his injuries by the time he first examined him, except for a “mild tenderness” in the arch of the shoulder blades, and a “mild occipital neuralgia.” He felt that plaintiff would recover fully within three or four weeks after that examination. In the second examination, made about two months later, the doctor found that plaintiff had improved and that “he could go back to any type of work.” In May, 1968, the doctor again concluded that plaintiff was not disabled. He testified that Hall did not have an unstable back, that there was nothing to indicate that he might have an intervertebral disc injury or a nerve involvement, and that he saw no need for performing a myelogram.
Dr. Melvin H. Gold, a specialist in occupational medicine, examined plaintiff on December 28, 1967, about four and one-half months after the accident. He found no signs of injury, except for a complaint of tenderness in the right suprascapular area, and he testified that he found no evidence of a ruptured disc. He felt that plaintiff had suffered some disability after the accident, but he stated that he “could find no reason why with one or two months symptomatic treatment this patient should not be rehabilitated with no residual disability.”
Finally, plaintiff was examined on March 3, 1969, by Dr. A. E. Minyard, an orthopaedic surgeon of Galveston, Texas. At Dr. Minyard’s request, an x-ray examination was made by a radiologist who reported: “The bones show no indication of injury. There is some osteoporosis. There are arthritic changes present which are mild except at C-5 where there is some joint narrowing, lipping and spur formation.” Dr. Minyard testified, however, that he was “not in total agreement with the radiologist’s report,” and he concluded that plaintiff “had injury to his C-5-6 disc, * * * causing nerve route irritation,” and that this disc injury resulted from the accident which occurred on August 14, 1967. Dr. Minyard treated plaintiff from March 3 until September 29, 1969, and he examined him again on May 12, 1970. He concluded that plaintiff was disabled from performing any kind of work, even light manual work, and he recommended that a myelogram be done and that surgery be performed to “remove the disc, stabilize the two joints.”
*123 The trial judge concluded that plaintiff is totally and permanently disabled as a result of the accident, and that he is entitled to compensation benefits commencing on August 28, 1967, subject to a credit for compensation previously paid. He also held that plaintiff is entitled to recover past and future medical expenses up to the sum of $2,500.00, subject to a credit for medical expenses previously paid. The past medical expenses included a bill for Dr. Donald T. Lazarz in the amount of $280.00.
Applicable here is the rule that in a workmen’s compensation case, as in other civil cases, plaintiff bears the burden of proof, and he must establish his claim by a preponderance of the evidence. Singleton v. Fireman’s Fund American Insurance Companies, et al., 250 So.2d 239 (La.App. 3 Cir. 1971). We also are aware of the rule that the factual findings of the trial judge are entitled to great weight on appeal, and his conclusions as to the facts should not be disturbed unless found to be clearly erroneous. Huntsberry v. Millers Mutual Fire Insurance Company, 205 So.2d 617 (La.App. 3 Cir. 1967).
In the instant suit all of the physicians who examined and treated Hall initially felt that he had fully recovered from his injuries before the payment of compensation benefits was discontinued. Among the first treating physicians were a general surgeon, an orthopaedic surgeon, and a neurologist, all of whom are specialists in appropriate fields. Dr. Minyard, the last treating physician, is the only medical expert who expressed a different opinion. He disagreed not only with all of the other physicians who testified, but also with the radiologist to whom he had sent plaintiff for an x-ray examination.
The trial judge obviously accepted the testimony of Dr. Minyard, and rejected that of all other medical experts. We feel that he clearly erred in doing so. Dr. Minyard did not see or examine the plaintiff until eighteen months after the accident occurred. He concedes that he did not examine any of the x-rays which were made of plaintiff’s head, neck and shoulders by other doctors shortly after the accident and before plaintiff went to Dr. Minyard for treatment, and he did not see any of the medical records or reports which had been made up prior to that time. He acknowledges that the prior x-rays and records “probably would have been available” if he had asked for them, but that he did not do so. We feel that without these prior x-rays, Dr. Minyard was not in as good a position as were the other treating physicians to determine whether plaintiff sustained a disc injury as a result of the accident which occurred in August, 1967.
Plaintiff testified that he worked almost continuously for a period of more than two years after the accident occurred, and that a substantial part of that work was as a welder. His conduct is consistent with the views expressed by all of the medical experts except Dr. Minyard. And, since Hall did perform heavy manual labor for such a long period of time after the accident, it is possible that the disc injury which Dr. Minyard found, assuming that there was such an injury, was caused by some activity or incident other than the accident which occurred on August 14, 1967.
We note from Dr. Minyard’s testimony that plaintiff did not return to him for treatment for a period of approximately nine months after September 29, 1969. Dr. Minyard expressed the opinion that plaintiff did not return for treatment because of his fear of surgery, or because of lack of finances to have the surgery performed. We believe, however, that if plaintiff was suffering to the extent which he describes, he would have sought medical treatment during that nine month period for the relief of some of his symptoms, even though he was afraid of surgery.
After considering all of the evidence, we have concluded that plaintiff has failed to establish by a reasonable preponderance of the evidence that he has been disabled from performing the work of a welder *124 since September 3, 1968. We believe that the evidence, in fact, preponderates to the effect that plaintiff has been able to perform those duties since that date. Our conclusion is that the trial judge clearly erred in finding that plaintiff is totally and permanently disabled.
At the trial, plaintiff testified that he was treated by Dr. Donald T. Lazarz, an orthopaedic surgeon, of Houston, Texas, from June 21, 1968, until March 7, 1969. The purpose of the treatment, he stated, was to obtain relief from the pain which he had suffered in his neck since the date of the accident. He identified a bill or a statement which he received from Dr. Lazarz, in which statement are listed the dates on which each treatment was administered. The statement shows that plaintiff is indebted to Dr. Lazarz in the amount of $280.00 for these treatments. This statement was admitted in evidence over the objection of defendant, and the trial judge included the amount of that bill in the award made to plaintiff.
Defendant contends that the trial judge erred in permitting the statement from Dr. Lazarz to be introduced in evidence and in awarding plaintiff the amount due that doctor. It is argued that the statement was not properly authenticated, that the defendant was not given an opportunity to cross-examine the doctor who allegedly performed the services, and that an objection was timely made when it was offered in evidence.
We think plaintiff’s testimony to the effect that he was treated by Dr. Lazarz for the neck injury which he sustained as a result of the accident of August 14, 1967, which testimony is corroborated by the above mentioned statement, constitutes pri-ma facie proof that those medical expenses were incurred for the injuries claimed here. Trinity Universal Insurance Company v. Normand, 220 So.2d 583 (La.App. 3 Cir. 1969). Defendant produced no evidence to contradict that proof. We thus find no error in that part of the judgment of the trial court which awarded plaintiff the medical expenses claimed, including the indebtedness due Dr. Lazarz.
For the reasons herein set out, that part of the judgment appealed from which awards workmen’s compensation benefits to plaintiff at the rate of $35.00 per week, commencing on August 28, 1967, and continuing during disability but not to exceed 400 weeks, is reversed, and judgment is hereby rendered rejecting plaintiff’s demands for such weekly benefits. All of the remaining portions of the judgment appealed from, and particularly the award of medical expenses to plaintiff, are affirmed. The costs of this appeal are assessed to defendant-appellant.
Affirmed in part and reversed in part.